570 A.2d 429

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. THOMAS
FULLER, A/K/A ANDREW J. DE BRACEY, AND GREGORY
LOYER, DEFENDANTS, AND MICHAEL TRAPP, A/K/A ROB-
ERT W. JORDAN, DEFENDANT–APPELLANT.

Argued January 2, 1990—Decided March 5, 1990.

*Mordecai Garelick,* Assistant Deputy Public Defender, argued the cause for appellant (*Alfred A. Slocum,* Public Defender, attorney).

*A. Peter DeMarco,* Assistant Prosecutor, argued the cause for respondent (*Nicholas L. Bissell, Jr.,* Somerset County Prosecutor, attorney).

*Catherine A. Foddai,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Peter N. Perretti, Jr.,* Attorney General, attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

We granted leave to appeal, 117 *N.J.* 66, 570 *A.*2d 429 (1989), to consider whether the bright-line rule of *State v. Hartley,* 103 *N.J.* 252, 511 *A.*2d 80 (1986), required the police authorities to readminister the *Miranda* warnings before interrogating defendant. On receiving those warnings shortly after his arrest, defendant exercised his right to remain silent, immediately following which he started to discuss with the arresting officer certain aspects of the case. The officer refused to speak with defendant absent defendant's request that he do so. When defendant evidenced his willingness to talk about the crimes for which he had been arrested, the officer, after first taking some precautionary measures described below, obtained an inculpatory statement, without, however, repeating the *Miranda* warnings.

Relying on *Hartley,* the trial court suppressed defendant's statement. The Appellate Division reversed. *State v. Fuller,* 231 *N.J.Super.* 66, 554 *A.*2d 1364 (1989). We affirm.

I

Acting on information concerning the whereabouts of defendant-appellant, Michael Trapp, wanted in connection with a robbery, burglary, and kidnapping, Lt. Gazaway of the Hillsborough Township Police Department participated in defendant's arrest in New York City. On the way to a Manhattan police station defendant told Gazaway that he was carrying a knife, later identified as belonging to the victim of the crimes. When they arrived at the station house, Gazaway gave defendant the warnings required by *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966). Defendant acknowledged

that he understood his *Miranda* rights, and when asked if he would waive them and speak with Gazaway, he replied that he would not. Thereupon Gazaway terminated the discussion, remaining in the same room with defendant but attending to other work.

About a minute or so after invoking his right to remain silent, Trapp asked Gazaway, "How did you find out where I would be?" He also inquired about what had happened to "the other guy." Gazaway responded that because defendant had originally refused to discuss the matter, the officer could not talk to him about the investigation unless defendant "voluntarily requested" that he do so. According to Gazaway, defendant expressed his willingness to talk about his role in the offenses as long as he did not have to "implicate anyone else involved."

At that point Gazaway asked another detective to step into the room. In the presence of defendant and the second officer, Gazaway then recited the foregoing events, namely, the previous furnishing of the *Miranda* warnings, defendant's acknowledgement that he understood his rights, and his exercise of the right to silence, followed just moments later by defendant's "voluntar[y] request to talk * * * as long as [Gazaway] did not make him implicate any other people who may have been involved in the robberies with him." Before the second officer left the room, defendant confirmed the accuracy of Gazaway's recitation and said he was willing to talk. He then responded to Gazaway's questioning with the statement that is the subject of this appeal.

In suppressing the statement the trial court found that although Trapp had knowingly, intelligently, and voluntarily waived his right to remain silent, there remained the threshold issue of whether the police had scrupulously honored defendant's previously-asserted right to remain silent. According to the trial court, our opinion in *Hartley, supra,* 103 *N.J.* at 267, 511 *A.*2d 80, announced a "bright-line, inflexible requirement that fresh *Miranda* [warnings] must be given after a suspect

has asserted the right to remain silent in order to satisfy the 'scrupulously honored' requirement," and that that bright-line rule applies not only when, as in *Hartley,* the police initiate further interrogation after a hiatus in the discussion but also, as in this case, when "the defendant resumed communications with the police."

The Appellate Division disagreed, concluding that "the rule established in *Hartley* is limited by its facts and expressed holding to those cases of 'police-initiated custodial interrogation.'" 231 *N.J.Super.* at 72, 554 *A.*2d 1364 (quoting *Hartley, supra,* 103 *N.J.* at 256, 511 *A.*2d 80). Because "in this case it was the defendant who initiated further conversation with Gazaway [that] led to the further interrogation with the resulting oral statement," *ibid.,* the Appellate Division reversed the trial court's order suppressing the statement and remanded the matter for trial. *Id.* at 76, 554 *A.*2d 1364.

## II

### A

In an effort to protect a criminal suspect's privilege against self-incrimination, the United States Supreme Court, in *Miranda v. Arizona, supra,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694, dictated that custodial interrogation must cease immediately on defendant's request. The Court did not, however, establish guidelines for when interrogation may begin again until it decided *Michigan v. Mosley,* 423 *U.S.* 96, 96 *S.Ct.* 321, 46 *L.Ed.*2d 313 (1975). The *Mosley* Court held that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Id.* at 102–03, 96 *S.Ct.* at 325–26, 46 *L.Ed.*2d at 320–21. It concluded that the "scrupulously honor" requirement had been met in Mosley's case.

In *Mosley* the police arrested the defendant on suspicion of robbery and carefully informed him of his rights when they

took him into custody. He acknowledged that he understood his rights but refused to discuss the charges, whereupon the police stopped the questioning. Two hours later, after rewarning defendant of his *Miranda* rights, the police interrogated defendant through a different officer, who asked about an unrelated crime. Defendant made incriminating statements at that time. The Court stated:

This is not a case * * * where the police failed to honor a decision of a person to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind. In contrast to such practices, the police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation. [423 *U.S.* at 105–06, 96 *S.Ct.* at 327, 46 *L.Ed.*2d at 322.]

Justice Stewart, writing for the majority, recognized that a literal interpretation of the language in *Miranda*, "interrogation must cease," would lead to "absurd and unintended results."

To permit the continuation of custodial interrogation after a momentary cessation would clearly frustrate the purposes of Miranda by allowing repeated rounds of questioning to undermine the will of the person being questioned. At the other extreme, a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the Miranda safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interest. [*Id.* at 102, 96 *S.Ct.* at 325, 46 *L.Ed.*2d at 320.]

This Court addressed the question of whether an accused's previously-invoked right to silence had been scrupulously honored in *State v. Hartley, supra*, 103 *N.J.* 252, 511 *A.*2d 80. Unlike the Supreme Court in *Mosley*, however, we adopted a bright-line minimum test, in the context of police-initiated interrogation, for determining whether a defendant's previously-invoked right to remain silent has been scrupulously honored.

Hartley was arrested on suspicion of murder and robbery. After being informed of his rights at the time of his arrest, he declined to speak with the police. The authorities again admin-

istered the *Miranda* warnings after taking Hartley into custody, and again he refused to talk. Questioning immediately ceased. About one and one-half hours later, an FBI agent told Hartley that if he was going to make a statement, the time was "now." Hartley then made a full confession. The federal agent did not readminister *Miranda* warnings at any time preceding the confession. Several minutes after the confession, New Jersey authorities readministered *Miranda* warnings to Hartley and he repeated his confession.

Claiming the confessions were obtained in violation of his common-law and fifth-amendment privileges against self-incrimination, Hartley moved to exclude the confessions. The trial court admitted the statements, finding that Hartley had voluntarily waived his right to silence. A jury convicted Hartley of felony murder and a divided Appellate Division panel affirmed. On appeal to this Court we held that

> before an accused's previously-asserted right to remain silent may be deemed to have been "scrupulously honored," law-enforcement authorities must, at a minimum, readminister the *Miranda* warnings. In the absence of those renewed warnings any inculpatory statement given in response to *police-initiated* custodial interrogation after the right to silence has been invoked is inadmissible. In addition, we determine that a police failure scrupulously to honor an accused's earlier-invoked right to silence amounts to a violation not simply of *Miranda*'s prophylactic rules but of the accused's privilege against *self-incrimination*. Therefore, any statement that a suspect may make after his right to silence has not been scrupulously honored is unconstitutionally compelled as a matter of law. (Emphasis added.) [103 *N.J.* at 256, 511 *A.*2d 80.]

Today's inquiry, then, focuses on who initiated the custodial interrogation—the police or defendant—and on the legal significance of that determination. The distinction between police-initiated and defendant-initiated conversation has been addressed both by the United States Supreme Court and by this Court in the context of the fifth-amendment right to counsel. *Oregon v. Bradshaw*, 462 *U.S.* 1039, 103 *S.Ct.* 2830, 77 *L.Ed.*2d 405 (1983); *Edwards v. Arizona*, 451 *U.S.* 477, 101 *S.Ct.* 1880, 68 *L.Ed.*2d 378, *reh'g denied*, 452 *U.S.* 973, 101 *S.Ct.* 3128, 69 *L.Ed.*2d 984 (1981); *State v. Kennedy*, 97 *N.J.* 278, 478 *A.*2d 723 (1984); *State v. Wright*, 97 *N.J.* 113, 477 *A.*2d 1265 (1984). *Edwards*

established a bright-line rule: once an accused has invoked the right to counsel, questioning must cease until counsel is available, unless the accused initiates the discussions. 451 *U.S.* at 484–85, 101 *S.Ct.* 1880, 68 *L.Ed.*2d at 386.

To determine whether an accused has "initiated" the conversation, a plurality of the Supreme Court in *Bradshaw* and four dissenting justices formulated separate tests, adverted to by the Appellate Division in this case. See 231 *N.J.Super.* at 72–73, 554 *A.*2d 1364. The plurality test, relied on by this Court in *State v. Wright, supra*, 97 *N.J.* at 124–25, 477 *A.*2d 1265, requires that the suspect "evince[ ] a willingness and a desire for a generalized discussion about the investigation," 462 *U.S.* at 1045–46, 103 *S.Ct.* at 2834–35, 77 *L.Ed.*2d at 412, whereas the dissent would call for a showing that defendant initiated further communication "about the subject matter of the criminal investigation," *id.* at 1052, 103 *S.Ct.* at 2838, 77 *L.Ed.*2d at 418.

We agree with the court below that under either test, "it can be said that defendant 'initiated' the further conversation about the subject matter of the criminal investigation." 231 *N.J.Super.* at 73, 554 *A.*2d 1364. In reaching that conclusion we recognize, of course, that not every question or statement an accused makes after invocation of the right to silence will have the same legal effect. Questions that an accused might ask regarding food, drink, and other necessities surely would not qualify as defendant-initiated conversations for the purposes of today's inquiry. On the other hand Trapp's two questions, "How did you know where I would be?" and "What happened to the other guy?" leave no doubt that he was inviting discussion of the crimes for which he was being held.

The facts before us are readily distinguishable from those in *Hartley.* Lt. Gazaway did not approach defendant and ask him to reconsider and waive his right to silence. There is no allegation that the police applied pressure of any kind to override defendant's will. Defendant invoked his right to re-

main silent, the police ceased the interrogation, and, within a minute or two, defendant himself broke the brief silence and began asking the detective questions about the investigation. By contrast, the defendant in *Hartley* had invoked his right to silence and was then approached by a law-enforcement officer who told him that if he were going to make a statement, the time was "now." Further, before the authorities suggested that Hartley reconsider his previous invocation of his right to silence, defendant gave no indication that he had changed his mind about making a statement.

Not only are the facts of this case not the kind present in *Hartley*, they are not the kind we had in mind when we established our bright-line, minimum-requirement rule: the police must furnish fresh *Miranda* warnings before they initiate custodial interrogation following a defendant's invocation of the right to silence. And although the members of the Court retain their conscientiously-held differing views on the correctness of our *Hartley* decision, we see no need to rehash that disagreement, for on this basic proposition we are all in accord: different procedural safeguards are appropriate when the police attempt to resume discussions about the investigation after a suspect in custody has expressed a desire to remain silent from those that are appropriate when the accused opens up the dialogue. Without, therefore, intimating unanimity in the holding of *Hartley*, we do express our unanimous agreement on what that holding is, as stated at the outset of that opinion: "In the absence of * * * renewed [*Miranda*] warnings any inculpatory statement given in response to *police-initiated custodial interrogation* after the right to silence has been invoked is inadmissible." 103 *N.J.* at 256, 511 *A.*2d 80 (emphasis added). Because it was the defendant who in this case initiated the discussion, the *Hartley* holding does not control the outcome.

## B

Defendant urges us to extend the *Hartley* rule to include those situations in which a defendant initiates further

conversation with the authorities regarding the investigation. We decline to do so.

As *Hartley* confirms, the admissibility of statements made by an accused after invoking the right to silence depends on the resolution of two separate inquiries: first, was the right scrupulously honored; second, was the waiver knowing, intelligent, and voluntary? This Court considered several important factors before imposing a *per se* minimum requirement, when police initiate further discussion, that fresh *Miranda* warnings be administered to satisfy the "scrupulously honored" inquiry. First, we relied on *Miranda* itself, which recognized " 'without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.' " *Hartley, supra,* 103 *N.J.* at 262, 511 *A.*2d 80 (quoting *Miranda, supra,* 384 *U.S.* at 467, 86 *S.Ct.* at 1624, 16 *L.Ed.*2d at 719). Further, the *Hartley* Court wished to "impress upon the accused that his right to remain silent is still in effect and that he need not speak unless it be by his own desire." *Id.* at 287, 511 *A.*2d 80.

In light of those considerations, we ruled in *Hartley* that if police are going to ask the accused to reconsider a previously-announced decision to remain silent, they must at the least readminister *Miranda* warnings as a reminder that the suspect can refuse. Recognizing the variety of ways in which the police can request the defendant to reconsider, and the variety of factors to consider in the analysis, the Court imposed as a minimum that fresh *Miranda* warnings be administered. We did not, however, state that fresh *Miranda* warnings alone are sufficient to satisfy the requirement that the right be scrupulously honored, only that they are indispensable.

Defendant argues that fresh *Miranda* warnings should be required in situations in which the accused initiates the conversation after previously invoking the right to remain silent

because there may be a misapprehension that once he or she begins to speak, the right to remain silent has irretrievably and irrevocably been relinquished. But absent police conduct that would lead to such a misapprehension, there is little justification for imposing a requirement of fresh *Miranda* warnings in the "scrupulously honor" inquiry. When the police immediately cease interrogation at the defendant's request and do nothing that can be considered coercive, such as resume questioning, we see no satisfactory rationale for such a requirement. Although a rule that calls for fresh *Miranda* warnings would serve important goals of *Hartley* other than the "scrupulously honor" concern, such as simplicity and uniformity of administration, those additional goals afford insufficient justification, standing alone, for extension of our bright-line rule to defendant-initiated conversations. We conclude that without police activity aimed at changing the defendant's mind, the critical element supporting the imposition of the bright-line rule is missing.

### C

Thus far we have concluded that in defendant-initiated conversation following the exercise of the right to silence, the police need not readminister the *Miranda* warnings as an indispensable element of their duty scrupulously to honor that right. That conclusion addresses one dimension of the "scrupulously honor" requirement, but the inquiry does not end there. We still must determine whether any of the other circumstances would undercut the Appellate Division's conclusion that the authorities scrupulously honored defendant's right to silence. Beyond that, we must determine whether, if the police honored the right, defendant validly waived it.

The facts surrounding the arrest and defendant's giving the statement are undisputed. Undoubtedly the police ceased questioning immediately on hearing defendant's invocation of his right to silence. No evidence has been offered that would

suggest that the police acted in any way that might be perceived as coercive.

The Appellate Division noted that even after defendant had asked the detective how the police knew where he would be and what happened to "the other guy," the detective had informed defendant that he, the detective, could not talk with him unless defendant waived his right to remain silent, which he had invoked just moments before. 231 *N.J.Super.* at 74, 554 *A.*2d 1364. Defendant indicated that he understood the situation but was willing to discuss his involvement in the crimes under investigation as long as he did not have to implicate anyone else. Further, the detective sought another police officer to verify what had just transpired between the defendant and the detective. *Ibid.*

We agree with the court below that the detective's actions subsequent to the immediate cessation of questioning on defendant's invocation of his right to silence adequately support a finding that defendant's right was scrupulously honored. 231 *N.J.Super.* at 77, 554 *A.*2d 1364. Because each situation must be evaluated on its own facts, however, we would not characterize those actions as indispensable to such a finding—that is, we would not want this opinion to be read as requiring a police officer to summon a colleague to verify the exchange between himself and the defendant under similar circumstances. Further, we agree with the Appellate Division's assessment that the subsequent actions of Lt. Gazaway would not be sufficient in themselves to satisfy the bright-line rule requiring fresh *Miranda* warnings were the rule applicable in this case. *Ibid.*

After concluding that the authorities scrupulously honored defendant's previously-invoked right to silence, the Appellate Division next addressed the question of the waiver of that right. We agree with the determination of both the trial court and Appellate Division that defendant beyond a reasonable

doubt knowingly, intelligently, and voluntarily waived his right to silence.

The circumstances make defendant's waiver abundantly clear. The authorities reminded him of his previous decision not to talk and informed him that Lt. Gazaway would not talk with him unless he voluntarily waived his previously-invoked right to silence. Having recently escaped from a prison in Florida, defendant stated that he was facing many years behind bars, and did not mind discussing the crimes under investigation so long as he did not have to implicate anyone else. Then the detective recounted those events in the presence of defendant and a second officer. Defendant acknowledged their veracity and admitted his participation in the Hillsborough burglary. The proof of waiver could scarcely be clearer.

## III

In sum, the bright-line rule established by *Hartley* requiring fresh *Miranda* warnings applies only to situations of police-initiated custodial interrogation following an accused's invocation of the right to remain silent. The administration of fresh *Miranda* warnings in that context is necessary, but not necessarily sufficient, for a finding that the accused's previously-invoked right to silence has been scrupulously honored. Fresh *Miranda* warnings are not required for a finding that the accused's previously-invoked right to silence has been scrupulously honored when the accused initiates dialogue with the authorities regarding the investigation. A court must examine the circumstances surrounding each instance individually. After the court determines that the defendant's previously-invoked right to silence has been scrupulously honored, it must make a separate inquiry into whether any subsequent waiver of that right was beyond a reasonable doubt knowing, intelligent, and voluntary under the totality of the circumstances.

Because the record before us satisfies the foregoing requirements, we affirm the judgment of the Appellate Division, which

reversed the order suppressing defendant's statement and remanded the case for trial.

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.