**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2420-18T4

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

BERNARD E. GREEN, a/k/a
PEANUT, GAILS, GAILS
GREEN, PEANUT GREEN,
BERNARD E. GALES,
JASON, NUT, and BERNARD
E. GRANT,

 Defendant-Appellant.

_____

Submitted October 13, 2020 – Decided October 23, 2020

Before Judges Sabatino and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 14-02-0153.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven J. Sloan, Designated Counsel, on the brief).

Jeffrey H. Sutherland, Cape May County Prosecutor, attorney for respondent (Gretchen A. Pickering, Senior Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Bernard E. Green pled guilty in 2014 to a reduced charge of aggravated manslaughter. He appeals the trial court's October 22, 2018 order denying his petition for postconviction relief ("PCR") without an evidentiary hearing. For the reasons that follow, we affirm.

I.

The following background and procedural history are pertinent to our discussion.

In the early hours of November 20, 2012, Lower Township police responded to the home of Cynthia Callahan in the Villas section of the Township after receiving reports that a man had been shot there. Upon arriving, police observed the deceased victim, Christopher Turner, lying face down in the front entrance of the residence.

The police interviewed Callahan, who witnessed the shooting. According to Callahan, Turner was a friend of hers who had come to her home the evening of November 19 with a woman named Crystal.

Defendant, who Callahan knew by the name of "Jason," came to the house in the early hours of November 20 and asked for Crystal. Perhaps sensing danger, Callahan told him Crystal was not there. According to Callahan, when defendant was told this, he forced his way in, armed with a handgun.

Defendant then brought Crystal outside the house and they briefly spoke. Crystal remained outside while defendant re-entered the house. He confronted Turner, asking him, "Where is the money at?" According to Callahan, Turner replied that there was no money, at which point defendant pointed the gun at Turner. A physical altercation ensued, during which defendant shot Turner four times. An autopsy of Turner confirmed that the cause of death was multiple gunshot wounds.

During their investigation, police identified "Jason" as defendant and "Crystal" as his wife, Crystal Green. Crystal provided the police with a statement in which she confirmed that defendant had come to Callahan's house looking for her. Crystal explained she had recently told defendant that she no longer wanted to be in a relationship with him. According to Crystal, defendant went to Callahan's house to confront her about her relationship with Turner, whom she had recently met.

A-2420-18T4

Crystal stated that she heard an altercation inside the house and at least one gunshot. She then drove defendant and another man[1] to another house in the Villas area before going to her own residence.

An arrest warrant was consequently issued for defendant, charging him with murder and other offenses. On November 26, defendant surrendered himself at the Cape May County Correctional Facility, where he gave investigators a statement.

Defendant admitted to going to Callahan's house on November 20 to find his wife, but "adamantly denied carrying a handgun." He denied knowing Turner, but admitted that he and Turner had engaged in a physical altercation during which he claimed Turner produced a firearm. Defendant claimed the gun had discharged during the fight, killing Turner.

Defendant stated he left the premises with Crystal and the other man, but could not recall where they went or what they did thereafter. The only thing defendant could remember was that he woke up in the bushes at some unspecified location allegedly as a result of being intoxicated. When further

---

[1] The investigation initially suggested the other man had brought defendant to Callahan's residence but remained outside the entire time the events were taking place. As part of the plea negotiations, defendant exculpated that individual, and criminal charges against him were subsequently dismissed.

4

questioned by the investigators about his actions after the altercation occurred, defendant refused to provide any additional details.

A grand jury charged defendant with first-degree murder and numerous other offenses. Plea negotiations ensued.

On September 11, 2014, defendant entered a guilty plea to amended Count One, first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), pursuant to a negotiated plea agreement. In exchange for the guilty plea, the State recommended a custodial sentence of twenty-four years, subject to the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2, and the Graves Act, N.J.S.A. 2C:43-6(c), eighty-five percent of which must be served without the possibility of parole.

On October 31, 2014, Judge Patricia M. Wild sentenced defendant in accordance with the negotiated plea, imposing the maximum sentence negotiated of twenty-four years.

At his plea hearing, defendant testified that he went to Callahan's residence armed with a loaded gun and searching for Crystal, "who admitted she was having an affair and doing drugs with Turner." Defendant told the court he had confronted Turner, gun in hand, and they engaged in a physical struggle during which defendant admittedly shot Turner four times.

Defendant denied to the court going to the house with the intent to shoot Turner. However, he agreed that he had "recklessly caused Turner's death under circumstances manifesting extreme indifference to the value of human life."

Defendant appealed his sentence on the excessive sentencing calendar. On March 10, 2015, we issued an order affirming defendant's sentence. The Supreme Court denied defendant's petition for certification. 223 N.J. 283 (2015).

Defendant thereafter filed a PCR petition, alleging his plea counsel had been ineffective in various respects. After hearing oral argument, Judge Sarah Beth Johnson issued a letter opinion on October 22, 2018 denying defendant's petition. This appeal followed.

II.

Defendant presents the following arguments in his brief:

> THE PCR COURT MISAPPLIED THE LAW IN DENYING THE DEFENDANT'S PETITION FOR POST CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS THIS CONTENTION HE WAS PROVIDED WITH INADEQUATE ASSISTANCE OF COUNSEL.
>
> 1. Defendant's alleged statements to the police that he shot the victim should have been suppressed as the

statements were in violation of <u>Miranda</u>[2] once defendant invoked his Fifth Amendment right to remain silent.

2. Plea counsel was ineffective for failing to pursue a diminished capacity defense and the decision to abandon the diminished capacity defense was objectively unreasonable.

3. Defendant should have been permitted to withdraw his plea bargain to correct a manifest injustice and to pursue a passion/provocation defense as the assertion of same may have influenced the outcome.

The applicable law for evaluating these arguments is well settled.

Under the Sixth Amendment of the United States Constitution, a person accused of crimes is guaranteed the effective assistance of legal counsel in his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). To establish a deprivation of that right, a convicted defendant must satisfy the two-part test enunciated in <u>Strickland</u> by demonstrating that: (1) counsel's performance was deficient, and (2) the deficient performance actually prejudiced the accused's defense. <u>Id.</u>; <u>see also</u> <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987) (adopting the <u>Strickland</u> two-part test in New Jersey).

The United States Supreme Court has extended these principles to the representation provided by a criminal defense attorney to an accused in

_____

2 <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

connection with a plea negotiation. Lafler v. Cooper, 566 U.S. 156, 162-63 (2012); Hill v. Lockhart, 474 U.S. 52, 58 (1985) (holding that "the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel").

In reviewing claims of ineffectiveness, courts apply a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. Strategic choices by counsel generally "will not serve to ground a constitutional claim of inadequacy . . . ." Fritz, 105 N.J. at 54 (citations omitted); see also State v. Perry, 124 N.J. 128, 153 (1991); Hill, 474 U.S. at 59 (articulating the "reasonable probability" test where a defendant claims his counsel did not properly advise him before entering a guilty plea).

"[B]ald assertions" of deficient performance are insufficient to support a PCR application. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999); see also R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013) (reaffirming these principles in evaluating whether any of a defendant's various PCR claims warranted an evidentiary hearing).

Here, defendant alleges his former counsel was ineffective in two respects: (1) failing to file a motion under the Miranda doctrine to suppress his

incriminating statements to the investigators who interviewed him; and (2) not pursuing a defense of diminished capacity. We reject both of these claims, substantially for the sound reasons expressed in Judge Johnson's written decision. We amplify that analysis with some brief discussion.

A.

First, we are unpersuaded that if trial counsel had filed a suppression motion it would have had merit. Defendant alleges that the investigators wrongfully engaged in substantive discussion with him about the facts of the case after he had already received Miranda warnings and invoked his right to counsel. As Judge Johnson correctly recognized, however, the discussion took place after defendant himself re-initiated further conversation with the investigators.

The record shows the investigators asked defendant if he was aware of the location of the missing gun that had been used in the shooting, to which defendant responded that he did not know and denied possessing a gun. That limited inquiry was arguably permissible under the "public safety" exception to Miranda, out of a concern the missing weapon could be picked up by a child or another third party and cause harm. See State v. Melendez, 423 N.J. Super. 1,

27 (App. Div. 2011). In any event, defendant gave no self-incriminating response to that gun location query, so the exchange was not prejudicial.

The investigators next attempted to obtain basic identifying information from defendant, such as his date of birth and address. This line of inquiry did not seek to "elicit an incriminating response." Id. at 31 (citations omitted). At that point, defendant spontaneously changed the subject and asked the investigators, "What's the purpose of you guys speaking to me like, you know what I mean?" In reply, the investigators explained to defendant they were not allowed to talk with him about the case because he had asked for an attorney. Nevertheless, defendant said he wished to converse with the officers "man to man" and provide his version of the events. The investigators then took a break to allow defendant to think over his desire to talk.

When the investigators returned, they reiterated to defendant that he had a right to an attorney. Defendant responded, "Come on, let's talk." The investigators then re-read defendant his rights and he signed a Miranda waiver form. Defendant then proceeded to divulge incriminating information to the officers, although he continued to deny bringing a gun to the residence.

Given the totality of these circumstances, we agree with Judge Johnson that any motion to suppress defendant's incriminating statements was likely to

fail. The Supreme Court of the United States has made clear that when a suspect who has received warnings voluntarily re-initiates discussion with law enforcement officers, there is no <u>Miranda</u> violation. <u>See, e.g.</u>, <u>Edwards v. Arizona</u>, 451 U.S. 477, 477 (1981); <u>see also</u> <u>Maryland v. Shatzer</u>, 559 U.S. 98, 109 (2010) (reaffirming the <u>Edwards</u> principles). That is what occurred here. The investigators gave defendant a reasonable interval to think over his desire to talk, but he chose to press ahead, even after being re-warned that his words could be used against him. The record shows defendant "evince[d] a willingness and a desire for a generalized discussion about the investigation . . . ." <u>State v. Fuller</u>, 118 N.J. 75, 82 (1990) (quoting <u>Oregon v. Bradshaw</u>, 462 U.S. 1039, 1045-46 (1983)).

In short, it is highly speculative to believe that defendant would have prevailed on a motion to suppress his statements. The PCR judge correctly analyzed the situation in light of the applicable law. Moreover, it cannot be assumed the State's comparatively favorable plea offer – downgrading the murder count to manslaughter – would have remained on the table if a suppression motion had been unsuccessful.

B.

We likewise concur with Judge Johnson that the assertion of a diminished capacity defense would not have proved beneficial to defendant. The record reflects that defendant had consumed an unspecified amount of alcohol on the night of the shooting. No blood alcohol reading to show his level of impairment exists. Nor has defendant presented any sworn certifications from witnesses about his perceived degree of impairment.

As N.J.S.A. 2C:2-8 and case law instruct, voluntary intoxication is only a viable defense to criminal charges where the intoxication is so severe that it cancels out an element of an offense. The defense requires a "prostration of faculties" and not merely the intake of a large quantity of alcohol. State v. Cameron, 104 N.J. 42, 54 (1986). Defendant claims he passed out in shrubbery after the shooting but he cannot identify the time or location or corroborate the events.

The PCR court rightly concluded that defendant had not presented sufficient proof to substantiate a diminished capacity defense to a jury. Furthermore, even if such a defense were supported by ample evidence, it most likely only would have negated the charge of intentional murder. The negotiated outcome of aggravated manslaughter was achieved by defense counsel without

12

risking the presentation of a diminished capacity defense that a jury may well have easily rejected. Again, there is no prima facie showing of counsel's ineffectiveness, and no evidentiary hearing was required. State v. Cummings, 321 N.J. Super. at 170.

C.

Defendant's third and final point is that the trial court should have allowed him to withdraw his guilty plea in order to pursue a passion/provocation defense to a jury. This argument plainly has no merit. Defendant expressly denied in his statement to the officers that he "snapped" because he found his wife with another man. In addition, the eyewitness accounts reflected that defendant's argument with the victim that preceded the shooting focused on money, not on defendant's wife. A passion/provocation defense would have been severely undermined by this evidence.

Further, as we noted earlier, the negotiated manslaughter plea effectively downgraded the murder charge, and provided defendant with a more certain reduction of his sentencing exposure with a twenty-four-year cap as compared with the thirty-year minimum for murder. See N.J.S.A. 2C:11-3(b)(1).

All other arguments presented by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

14