671 A.2d 1115

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. ROBERT J. MALLON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 13, 1996—Decided March 7, 1996.

140

Before Judges HAVEY, CONLEY and BRAITHWAITE.

*Susan L. Reisner*, Public Defender, attorney for appellant (*M. Virginia Barta*, Assistant Deputy Public Defender, of counsel and on the letter brief).

*Deborah T. Poritz*, Attorney General, attorney for respondent (*John F. O'Hern*, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

CONLEY, J.A.D.

 Following an unsuccessful *Miranda*[1] hearing, and reserving the right to appeal the *Miranda* ruling, defendant pled guilty to one count of third degree conspiracy to commit theft, *N.J.S.A.* 2C:20–3 and *N.J.S.A.* 2C:5–2 (count one), nine counts of third degree burglary, *N.J.S.A.* 2C:18–2 (counts two through ten), and one count of third degree theft, *N.J.S.A.* 2C:20–3 (count eleven). Count one merged with count eleven, and concurrent five year terms of probation were imposed on each of the burglary counts as well as the theft count. A Violent Crimes Compensation Board penalty of $50 on each count and restitution of $9,205 was also imposed.[2] Defendant argues before us that his custodial statement should have been suppressed because the police did not scrupulously honor the invocation of his right to remain silent or his request for an attorney. We think this may be so, but, for the following reasons, remand for a limited evidentiary hearing. *Cf. State v. Hutchins*, 116 *N.J.* 457, 476, 561 *A.*2d 1142 (1989); *State v.*

---

[1] *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

[2] The judgment of conviction also reflects the imposition of a $75 Safe Neighborhood Services Fund (SNSF) penalty, although the transcript of the sentencing does not so state. The SNSF penalty, however, was not effective at the time of defendant's sentence and the VCCB penalty at that time was $30 a count. Defendant raises the validity of these penalties in point II of his brief but we are told by the State that the trial judge has entered an amended judgment vacating the SNSF penalty and reducing the VCCB penalty to $30 each count. Point II, then, is moot.

*Jackson,* 272 *N.J.Super.* 543, 564, 640 *A.*2d 863 (App.Div.1994), *certif. denied,* 142 *N.J.* 450, 663 *A.*2d 1358 (1995).

The critical facts as presented at the *Miranda* hearing are as follows. On December 4, 1991, a burglary occurred at a New Jersey Bell facility in East Brunswick. Defendant's girlfriend at the time was the daughter of an East Brunswick police lieutenant. Defendant had become friendly with the lieutenant. Apparently, the girlfriend had indicated to her father that defendant was involved in the burglary. A warrant was issued for defendant's arrest and when he learned of that, he voluntarily went to the East Brunswick police headquarters on the morning of June 2, 1992. Two officers ultimately talked to him, but only one, Sergeant Mitchell, was produced by the State. According to Sergeant Mitchell, he placed defendant under arrest and administered his *Miranda* warnings at 11:30 a.m. The *Miranda* card that defendant then executed was witnessed only by Sergeant Mitchell. Sergeant Mitchell began to discuss the break-in with defendant and informed him that his girlfriend had come forward and that the police possessed a taped telephone conversation he had had with her concerning the crime. Defendant indicated that he had some things he wanted to say, but that he wished to consult with an attorney. The sergeant was not sure of defendant's exact words but defendant had indicated that he wanted to tell him something but wanted to think about calling an attorney and did not want to discuss the matter any further. The sergeant characterized defendant's desire not to discuss the matter and to consult an attorney, however phrased, as "emphatic." It was "not more than ten to fifteen minutes" from the time defendant signed the rights card to the time that he invoked his right to remain silent and expressed a desire to consult an attorney. The sergeant ceased questioning him about the crimes, but continued to discuss personal matters which "covered everything from ... [his girl-friend and her father, the police lieutenant] to what type of work he was doing, what his plans were, that type of thing."

Sergeant Mitchell then left the room where defendant was confined and informed his immediate supervisor, Sergeant Gomolka, that the defendant had requested an attorney and did not wish to discuss the matter. Sergeant Gomolka, nonetheless, wanted to speak to the defendant and went into the room where defendant was. He and defendant had a conversation for a short period of time. When Gomolka came out of the room, he told Sergeant Mitchell that defendant now wanted to speak to him. Sergeant Mitchell did not know what transpired in the room between defendant and Sergeant Gomolka but reentered the room, informed defendant that he did not have to speak to him, readvised him of his *Miranda* rights in the presence of Sergeant Gomolka, and then all three signed the second *Miranda* card at 12:28 p.m. Defendant then gave a statement at 12:48 p.m. which was tape recorded and transcribed.

Defendant testified at the *Miranda* hearing that after he had requested to speak to an attorney, Sergeant Mitchell told him that it was "too late" to contact one and that he would probably have to go to the workhouse. The sergeant also told him that his bail status would be $25,000 cash, but that the police could recommend that he be released R.O.R. to avoid having his name in the newspaper, losing his job, and having his parents find out about the offense if he would "give them what they needed." Defendant thought Sergeant Gomolka was also in the room at that time. Defendant testified that he requested an attorney four or five times before his statement was taken. After he gave the police his statement, they released him and told him to appear in municipal court the next day.

In rebuttal, Sergeant Mitchell testified that he had no recollection of discussing defendant's parents, publicity, or bail. He admitted that the case was treated differently from a regular case because of the involvement of Lieutenant Kenney and his daughter. With respect to bail, he also admitted:

Initially we were going to set bail. But after speaking with my sergeant, after speaking with the judge, if you noticed on the bottom of the warrant we made it to

be set. Okay? And I felt I needed a chance to speak with Robert before any type of bail situation was placed on him again out of respect to Lieutenant Kenney.

He denied threatening defendant with being sent to the workhouse and setting $25,000 bail.

As we have said, Sergeant Gomolka was never called by the State. It was he, however, who, according to Mitchell, had a separate conversation with defendant after defendant had invoked his right to remain silent and had indicated a desire to consult with an attorney. It was that conversation, apparently, which prompted defendant to change his mind and to give a statement. We are of the view that his testimony is critical, both in terms of whether defendant's initial assertion of his right to remain silent was "scrupulously honored" such that the readministration of the *Miranda* warnings followed by defendant's waiver thereof satisfied *State v. Hartley,* 103 *N.J.* 252, 511 *A.*2d 80 (1986), and in terms of whether the bright-line proscription of *Edwards v. Arizona,* 451 *U.S.* 477, 101 *S.Ct.* 1880, 68 *L.Ed.*2d 378 (1981), that is triggered upon an assertion of the separate, but ancillary, right to counsel, was complied with.

▮ Preliminarily, we reject the State's contention that the right to counsel issue was not raised below. To be sure, this is not a Sixth Amendment right to counsel issue. But both Sergeant Mitchell's testimony, as well as defendant's, plainly establishes that defendant asserted his right to counsel as part of his custodial rights that arise from the privilege against self-incrimination. *See State v. Reed,* 133 *N.J.* 237, 251–52, 627 *A.*2d 630 (1993). Moreover, even if not precisely raised below, we would still consider the issue. *See State v. Bey (II),* 112 *N.J.* 123, 140, 548 *A.*2d 887 (1988).

The trial court here determined solely whether defendant's waiver of his rights following the second reading of *Miranda* warnings was knowing and voluntary. As to the conclusion that it was, we have no quarrel. *State v. Johnson,* 42 *N.J.* 146, 199 *A.*2d 809 (1964). But where the right to remain silent is invoked, an inquiry must be made as to the scrupulous honoring of that

invocation, *State v. Hartley, supra,* 103 *N.J.* at 260–61, 511 *A.*2d 80, and where the right to an attorney is exercised, an analysis of the proscription in *Edwards v. Arizona, supra,* 451 *U.S.* at 484–85, 101 *S.Ct.* at 1885, 68 *L.Ed.*2d at 386, must be made. It is only if these rights have not been exercised, that the State then has just the "heavy but lesser burden" of demonstrating a knowing, intelligent and voluntary waiver. *See State v. Hartley, supra,* 103 *N.J.* at 260–61, 511 *A.*2d 80; *State v. Kennedy,* 97 *N.J.* 278, 286, 478 *A.*2d 723 (1984). *And see Oregon v. Bradshaw,* 462 *U.S.* 1039, 103 *S.Ct.* 2830, 77 *L.Ed.*2d 405 (1983).

■ We first consider defendant's invocation of his right to remain silent. Once that has been asserted, it must be "scrupulously honored." *Michigan v. Mosley,* 423 *U.S.* 96, 102–03, 96 *S.Ct.* 321, 325–26, 46 *L.Ed.*2d 313, 320–21 (1975); *Miranda v. Arizona, supra,* 384 *U.S.* at 467, 86 *S.Ct.* at 1624, 16 *L.Ed.*2d at 719; *State v. Johnson,* 120 *N.J.* 263, 282, 576 *A.*2d 834 (1990); *State v. Fuller,* 118 *N.J.* 75, 81, 570 *A.*2d 429 (1990); *State v. Bey (I),* 112 *N.J.* 45, 66, 548 *A.*2d 846 (1988); *State v. Hartley, supra,* 103 *N.J.* at 260–61, 511 *A.*2d 80; *State v. Kennedy, supra,* 97 *N.J.* at 288, 478 *A.*2d 723. Further, in *Hartley,* the Supreme Court cautioned that:

> [c]are must be taken ... that there be no blurring of the separate lines of analysis that are followed in respect of the "scrupulously honor" requirement on the one hand and the waiver issue on the other. The distinction between the two concepts stands out in bold relief in this case: *given our holding that the failure scrupulously to honor a previously-invoked right to silence renders unconstitutionally compelled any resultant incriminating statement made in response to custodial interrogation, there can be no question of waiver.*
>
> [103 *N.J.* at 261, 511 *A.*2d 80 (emphasis added) ].

At the least, then, "indispensable to a permissible resumption of custodial interrogation of a previously-warned suspect [is] the furnishing of fresh *Miranda* warnings." *Id.* at 267, 511 *A.*2d 80. Here, Sergeant Mitchell did readminister the *Miranda* warnings before recommencing the interrogation and taking defendant's statement.

■ However, the fresh *Miranda* warnings and defendant's statement followed almost immediately after the conversation that Gomolka had with defendant which, itself, followed on the heels of defendant's initial assertion of his right to remain silent. Under some circumstances, where the police have not "scrupulously honored" a previously invoked right to silence, readministration of *Miranda* rights will not cure the violation. *See Hartley, supra,* 103 *N.J.* at 280–81, 511 *A.*2d 80 (where a second interview accompanied by fresh warnings but "follow[ing] so closely on the heels of the first as to be part and parcel of it, and hence to be burdened with the same constitutional infirmities. . . ." and where an otherwise admissible statement "constitutes part of a continuous interrogation initiated by improper questioning or other wrongful acts or omissions by law enforcement officers. . . .", statements thereby obtained, even with fresh *Miranda* warnings, must be suppressed); *State v. Barowski,* 226 *N.J.Super.* 235, 241–43, 543 *A.*2d 1039 (App.Div.1988) ("[d]efendant's statement, although preceded by *Miranda* warnings, came on the heels of the constitutional violation and must realistically be viewed as a product of that violation. There are no intervening facts which can be said to explain the statement or attenuate the constitutional taint.") *Id.* at 243, 543 *A.*2d 1039.

■ On the other hand, if a defendant initiates further police conversations after invoking his right to remain silent, the resumption of police questioning will not constitute a failure to scrupulously honor that right. *State v. Fuller, supra,* 118 *N.J.* at 83, 570 *A.*2d 429 ("different procedural safeguards are appropriate when the police attempt to resume discussions about the investigation after a suspect in custody has expressed a desire to remain silent from those that are appropriate when the accused opens up the dialogue."). *And see State v. Jackson, supra,* 272 *N.J.Super.* at 561–62, 640 *A.*2d 863.

■ What occurred during the Gomolka conversation is, thus, critical with respect to whether the police "scrupulously honored" defendant's asserted right to silence and, if not, whether the fresh

*Miranda* warnings were sufficient to overcome that violation. If such a violation occurred, we are inclined to think not, as to the latter, because the resumption of the questioning by Mitchell followed almost simultaneously the Gomolka conversation so as to be "continuous to" and "inextricably entwined" therewith. *State v. Barowski, supra,* 226 *N.J.Super.* at 242, 543 *A.2d* 1039. The inquiry must be whether Gomolka, despite defendant's invocation of silence, continued to interrogate defendant in an effort to "get him to talk." *Hartley, supra,* 103 *N.J.* at 268–69, 511 *A.2d* 80. *Compare State v. Fuller, supra,* 118 *N.J.* at 82–83, 570 *A.2d* 429 ("[t]he facts before us are readily distinguishable from those in *Hartley.* Lt. Gazaway did not approach defendant and ask him to reconsider and waive his right to silence. There is no allegation that the police applied pressure of any kind to override defendant's will. Defendant invoked his right to remain silent, the police ceased the interrogation, and, within a minute or two, defendant himself broke the brief silence and began asking the detective questions about the investigation."). Because the trial judge here focused solely upon defendant's waiver after being re*Mirandized* and because Sergeant Gomolka was not produced by the State, the critical inquiry was not made.

 Defendant also urges a violation of his right to counsel. The right to counsel as a part of the bundle of *Miranda* rights is zealously protected. Recently, our Supreme Court reemphasized this:

> The right to counsel has been the object of special judicial solicitude. The importance of that right was explained by Justice Pollock last term in the context of post-indictment police custodial interrogation. Although acknowledging that in the post-indictment context the right to counsel is the right to actual representation separately guaranteed by the Sixth Amendment, the Court noted the correlation between the assistance of counsel and the exercise of the privilege against self-incrimination, stating that the right to counsel during police interrogation is "a preventive measure that protects an accused from self-incrimination during police questioning." *State v. Sanchez,* 129 *N.J.* 261, 266 [609 *A.2d* 400] (1992) (citing *Miranda* ). However, equally relevant to the pre-indictment stage of a prosecution is the observation that the "essential purpose" of the right to counsel in the context of custodial interrogation "is to prevent compelled self-incrimination." *Ibid.*

The significance of the right to counsel as an adjunct of the privilege against self-incrimination is evidenced by the special requirements that are affixed to that right. It is not sufficient to advise a suspect subjected to custodial interrogation only that he or she has a generalized right to an attorney. It is essential to inform the suspect that, if the suspect cannot afford one, an attorney will be provided at State expense. *Kennedy, supra,* 97 *N.J.* 278 [478 *A.*2d 723]. *Miranda, supra,* 384 *U.S.* at 473, 86 *S.Ct.* at 1627, 16 *L.Ed.*2d at 723. It is also essential that the suspect be clearly informed that he or she may ask for counsel at any time during custodial interrogation, and, additionally, that interrogation will be stopped any time the defendant desires counsel. *Kennedy, supra,* 97 *N.J.* at 288 [478 *A.*2d 723]. Further, a suspect need not be articulate, clear, or explicit in requesting counsel; any indication of a desire for counsel, however ambiguous, will trigger entitlement to counsel. *Bey [ (II) ], supra,* 112 *N.J.* at 142 [548 *A.*2d 887]; *see State v. Wright,* 97 *N.J.* 113 [477 *A.*2d 1265] (1984).

Our decisional law on the state right against self-incrimination is based on the understanding that the privilege is defined by the ancillary rights, like the right to counsel during custodial interrogation. Moreover, the protections afforded by those ancillary rights provide a metric by which to measure the strength of the privilege. The history of our case law reflects a strong commitment to enhance those ancillary rights to forestall the possible use of coerced confessions. Our own jurisprudence and legal traditions, in light of the distinctive origin and development of the privilege against self-incrimination in New Jersey, *State v. Williams,* 93 *N.J.* 39, 57 [459 *A.*2d 641] (1983), impel us to maximize the protections of the ancillary rights, including especially the right to counsel, to vindicate fully the privilege against self-incrimination. [*State v. Reed, supra,* 133 *N.J.* at 252–53, 627 *A.*2d 630].

Once the right to counsel has been asserted during a custodial interrogation, further interrogation may not occur "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona, supra,* 451 *U.S.* at 485, 101 *S.Ct.* at 1885, 68 *L.Ed.*2d at 386.

■ Here, the trial judge did not determine whether defendant "initiated" the recommencement of Sergeant Mitchell's interrogation. It may be that the trial judge did not because she concluded that defendant had not sufficiently invoked his right to counsel. In this respect, the trial judge said:

The defendant, I do find as a fact, did not ask the East Brunswick police to get him an attorney, to go out and hire an attorney. He did not ask to be permitted to call, to see whether he can have an attorney come to the police station. I find as a fact there is a complete dearth of testimony. And the defendant testified in this that he requested that an attorney come down to the police station.

What I find as a fact based on the credible evidence before me is that the defendant informed Sergeant Mitchell that he really wanted to tell him some things but he thought it was in his best interest to speak to an attorney first.

A request for an attorney within the context of *Miranda* rights need not be "articulate, clear, or explicit ... any indication of a desire for counsel, however ambiguous, will trigger entitlement to counsel." *State v. Reed, supra,* 133 *N.J.* at 253, 627 *A.*2d 630; *State v. Bey (II), supra,* 112 *N.J.* at 142, 548 *A.*2d 887. *But see Davis v. United States,* 512 *U.S.* ——, —— – ——, 114 *S.Ct.* 2350, 2356–57, 129 *L.Ed.*2d 362, 371–73 (1994) (defendant's statement that "maybe I should talk to an attorney" did not trigger *Edwards* because an ambiguous or equivocal request is not sufficient, but rather, the response must be such that a reasonable officer under the circumstances would have understood the expression to be a request for an attorney); *Bey (II), supra,* 112 *N.J.* at 138–141, 548 *A.*2d 887.

■ Here, whether or not defendant requested the East Brunswick police to "go out and hire an attorney," or asked to call one, or asked to have one meet him at the police headquarters, we think it evident that he expressed the desire not to speak any further without first speaking to an attorney. Indeed, Sergeant Mitchell so understood that to have been his request and we think that is sufficient to trigger an *Edwards* analysis. That analysis requires a careful consideration of the facts and circumstances following defendant's request and leading up to the recommencement of the questioning.

■ The State, here, "bears the burden of proof and that burden is a heavy one." *State v. Reed, supra,* 133 *N.J.* at 251, 627 *A.*2d 630. In the context of the facts presented during the *Miranda* hearing, it must show that defendant's right to silence was "scrupulously honored" and that defendant himself waived his right to counsel request by "initiat[ing] further communication." In this respect, what occurred between defendant and Sergeant Gomolka is critical. It was not defendant who initiated this exchange. That that conversation was obviously crucial is evidenced by the fact that immediately after Gomolka spoke to defendant, Gomolka announced to Mitchell that defendant wished to make a statement.

We recognize that defendant's version of what occurred placed Gomolka with Mitchell during the entire interrogation. But the trial court did not find defendant credible. We also recognize that the trial judge did not consider the substance of the conversation between Gomolka and defendant important because "the State is not seeking to admit any admissions the defendant might have made, any part of that conversation that went on." But that is not the point. Regardless of what statements the State sought to admit into evidence, the fact is defendant did not initiate the contact with Gomolka and something obviously occurred during that conversation to change his mind about not speaking further with the police and until he had spoken to an attorney. All of the objective facts would point to some words, action, or conduct on Gomolka's part to convince defendant to give a statement. If so, the statement defendant thereafter gave could not be considered self-initiated.

We might be inclined to simply reverse outright on the basis of the State's failure to sustain its burden of proof. But we express some concern in doing so because both the scrupulous honoring of the right to silence and the right to counsel claim, as articulated before us, were not so clearly articulated before the trial judge. Defendant did not precisely focus his argument upon the contention that his statement was not initiated by him nor did he precisely focus upon the "scrupulously honored" aspect of his asserted right to silence. This may well be why the State did not present Gomolka and why the trial judge may not have fully appreciated the significance of what may have occurred between defendant and Gomolka.

We thus remand to permit the State to present, the defendant to cross-examine, and the trial judge to consider, the testimony of Sergeant Gomolka. If, following that testimony, the trial judge determines that Gomolka influenced defendant's determination to give a statement such that it was not initiated by defendant, or that his discussion with defendant constituted a violation of the obligation to "scrupulously honor" defendant's asserted right to

silence, the statement must be suppressed and defendant permitted to withdraw his plea and the matter to thereafter proceed. If the trial judge determines that defendant himself initiated the statement *and* that his right to silence was "scrupulously honored," the judgment of conviction and sentence shall be affirmed. We do not retain jurisdiction.