**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2948-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DONALD PETERSON,

     Defendant-Appellant.

_____

Submitted October 26, 2020 – Decided January 05, 2021

Before Judges Fasciale and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 12-07-0564.

Joseph E. Krakora, Public Defender, attorney for appellant (John V. Molitor, Designated Counsel, on the brief).

Michael H. Robertson, Prosecutor, attorney for respondent (Amanda Frankel, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from a December 7, 2018 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. Defendant contends that his trial and appellate counsel provided ineffective assistance. Judge Anthony F. Picheca, Jr., entered the order and rendered a comprehensive and well-reasoned fourteen-page opinion. We affirm.

In July 2012, defendant was indicted for second-degree possession of a firearm by a previously convicted person, N.J.S.A. 2C:39-7(b), and fourth-degree possession of a non-firearm weapon (a machete) by a previously convicted person, N.J.S.A. 2C:39-7(a).[1] Defendant was the subject of an investigation into the unexplained death of a sixteen-year old boy, J.M.[2] Pursuant to the investigation, police obtained warrants to search defendant's apartment and trucks for microscopic and other evidence that connected defendant and J.M. The police subsequently found a rifle in defendant's apartment and a machete in one of his vehicles. Defendant moved to suppress the evidence, claiming police exceeded the scope of the warrant and that the

---

[1] Defendant was previously convicted of aggravated assault, precluding him from thereafter possessing a firearm and other specified weapons.

[2] An autopsy of J.M. revealed that he died of acute alcohol poisoning. Defendant was not charged in connection with the death.

warrant application failed to particularly describe the weapons that were seized. In December 2013, the motion court suppressed the rifle and machete. The motion court rejected the State's argument that this evidence was lawfully seized under the plain view doctrine, reasoning that police were aware the firearm would be present based on a statement defendant gave to police before the warrant was executed.[3] We granted the State's interlocutory motion for leave to appeal and reversed the suppression order, holding that the weapons were admissible under the inevitable discovery exception to the exclusion rule. State v. Peterson, No. A-2161-13T2 (App. Div. Dec. 12, 2014).

In April 2015, defendant pled guilty to both weapons charges pursuant to a negotiated plea agreement. Defendant appealed his convictions, claiming once again that the evidence should have been suppressed. We dismissed defendant's appeal, ruling that we had already decided that issue in the interlocutory appeal. State v. Peterson, No. A-0356-15 (App. Div. Apr. 13, 2016). The Supreme Court denied defendant's petition for certification. State v. Peterson, 228 N.J. 240 (2016). Thereafter, the PCR judge entered the order under review.

---

[3] We note that in State v. Gonzales, the New Jersey Supreme Court prospectively eliminated the "inadvertence" element of the plain view exception to the warrant requirement. 227 N.J. 77, 99 (2016). That decision applies only to searches conducted after November 15, 2016.

On appeal, defendant argues:

POINT I
THIS COURT SHOULD REVERSE THE [PCR] COURT'S DECISION TO DENY DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF BECAUSE DEFENDANT'S ATTORNEYS WERE INEFFECTIVE WHEN THEY DID NOT ARGUE THERE WAS NO PROBABLE CAUSE TO SUPPORT THE ISSUANCE OF A WARRANT TO SEARCH DEFENDANT'S APARTMENT

POINT II
THIS COURT SHOULD REVERSE THE [PCR] COURT'S DECISION TO DENY DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF BECAUSE DEFENDANT'S ATTORNEYS WERE INEFFECTIVE WHEN THEY DID NOT REQUEST A HEARING CHALLENGING THE VERACITY OF THE WARRANT APPLICATION

POINT III
THIS COURT SHOULD REVERSE THE [PCR] COURT'S DECISION TO DENY DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF BECAUSE DEFENDANT'S ATTORNEYS NEVER OFFERED A COUNTER-ARGUMENT TO THE APPELLATE DIVISION'S HOLDING THAT THE INEVITABLE DISCOVERY EXCEPTION TO THE EXCLUSIONARY RULE APPLIED

POINT IV
DEFENDANT'S FIRST ATTORNEY WAS INEFFECTIVE FOR ABANDONING HIS CHALLENGE TO THE ADMISSION OF DEFENDANT'S ALLEGED CONFESSION

A-2948-18T2

POINT V
DEFENDANT'S FIRST ATTORNEY WAS
INEFFECTIVE FOR REFUSING TO ALLOW
DEFENDANT TO TESTIFY BECAUSE
DEFENDANT WAS THE ONLY PERSON WHO
COULD HAVE REFUTED SCHUTTA'S
TESTIMONY REGARDING THE
CIRCUMSTANCES SURROUNDING
DEFENDANT'S FOUR STATEMENTS

FPOINT VI
THIS COURT SHOULD REVERSE THE PCR
JUDGE'S DECISION TO DENY DEFENDANT'S
CLAIM THAT HIS FIRST ATTORNEY PROVIDED
INACCURATE ADVICE ON THE MAXIMUM
SENTENCE DEFENDANT COULD RECEIVE

We disagree and affirm substantially for the reasons given by Judge Picheca. We add the following remarks.

Post-conviction relief serves the same function as a federal writ of habeas corpus. State v. Preciose, 129 N.J. 451, 459 (1992). It is not a substitute for direct appeal. State v. Mitchell, 126 N.J. 565, 583 (1992). To establish a violation of the right to the effective assistance of counsel, a defendant must meet the two-part test articulated in Strickland v. Washington, 466 U.S. 668 (1984), and adopted in State v. Fritz, 195 N.J. 42 (1987). "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant

A-2948-18T2

must show that the deficient performance prejudiced the defense." <u>Strickland</u>, 466 U.S. at 687.

To meet the first prong of the <u>Strickland/Fritz</u> test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." <u>Ibid.</u> Reviewing courts indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. The second prong of the <u>Strickland/Fritz</u> test requires the defendant to show that counsel's errors created a "reasonable probability" that the outcome of the proceedings would have been different than if counsel had not made the errors. <u>Strickland</u>, 466 U.S. at 694.

The <u>Strickland</u>/<u>Fritz</u> two-pronged standard also applies to claims of ineffective assistance of appellate counsel. <u>State v. Morrison</u>, 215 N.J. Super. 540, 547 (App. Div. 1987). The hallmark of effective appellate advocacy is the ability to "winnow[] out weaker arguments on appeal and focus[] on one central issue if possible, or at most, on a few key issues." <u>Jones v. Barnes</u>, 463 U.S. 745, 751–52 (1983). Importantly for purposes of this appeal, it is well-settled that failure to pursue a meritless claim does not constitute ineffective assistance. <u>State v. Webster</u>, 187 N.J. 254, 256 (2006). Appellate counsel has no obligation to raise spurious issues on appeal. <u>Ibid.</u>

A-2948-18T2

Short of obtaining immediate relief, a defendant may prove that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim. Preciose, 129 N.J. at 462–63. The PCR court should grant an evidentiary hearing only when a defendant is able to prove a prima facie case of ineffective assistance of counsel, there are material issues of disputed fact that must be resolved with evidence outside of the record, and the hearing is necessary to resolve the claims for relief. R. 3:22-10(b); Preciose, 129 N.J. at 462. To meet the burden of proving a prima facie case, a defendant must show a reasonable likelihood of success under the Strickland/Fritz test. Preciose, 129 N.J. at 463.

After carefully reviewing the record in light of these legal principles, we conclude that defendant is unable to meet the Strickland/Fritz prongs as to any of his contentions. Nor has he established a prima facie case warranting an evidentiary hearing.

We begin by considering defendant's argument—made for the first time on this appeal—that both his trial and appellate counsel rendered ineffective assistance in failing to challenge the validity of the search warrants. Defendant now claims there was no probable cause to search for microscopic and other evidence relating to J.M.'s death. We disagree. The record contains defendant's

statements to police confirming his interactions with J.M. Furthermore, distinctive post-mortem lividity and skin compression marks on J.M.'s body matched the pattern of the ridges on the bed liner of defendant's F250 truck, suggesting the youth had been transported after his death. These circumstances, and especially the apparent link between J.M.'s corpse and defendant's truck, established ample probable cause to support the issuance of the search warrants. Neither trial nor appellate counsel rendered ineffective assistance by failing to pursue a baseless suppression argument. Nor was defendant prejudiced by their failure to raise an argument that ultimately would have proved unsuccessful. Strickland, 466 U.S. at 687.

We likewise reject defendant's argument, also raised for the first time on this appeal, that his trial and appellate counsel were ineffective for failing to challenge the veracity of the affidavit in support of the search warrants under Franks v. Delaware, 438 U.S. 154 (1978), and State v. Howery, 80 N.J. 563 (1979). Those cases require a hearing only when a defendant makes a substantial preliminary showing that the search warrant affiant presented a deliberate falsehood or demonstrated a reckless disregard for the truth. Franks, 438 U.S. at 171; Howery, 80 N.J. at 567. Furthermore, a defendant must show

that the warrant would not be supported by probable cause without the false information.  Franks, 438 U.S. at 172; Howery, 80 N.J. at 568.

Defendant now argues that the search warrant affiant did not inform the warrant judge that an initial cursory consent search of defendant's residence found nothing of evidential value. This argument lacks sufficient merit to warrant extensive discussion.  R. 2:11-3(e)(2).  Defendant acknowledges in his appeal brief that, "[a]dmittedly, Franks does not prohibit the police from omitting crucial facts.  Nevertheless, to the extent the doctrine first announced in Franks does not address the precise scenario herein, the doctrine should be expanded."  We agree with defendant only insofar that Franks and Howery do not require that search warrant applications include every fact and circumstance known to the affiant.  In these circumstances, however, the fact that police failed to find microscopic evidence during the initial consent search was not exculpatory and had no bearing on whether there was probable cause to believe a more thorough search would reveal evidence relating to J.M.'s demise.  Many of the items described in the search warrant, see note 3, supra, could not have been detected or properly collected in the truncated consent search.  In any event, we decline defendant's invitation to extend the Franks/Howery doctrine to situations that lack deliberate falsehoods or a reckless disregard for the truth.

We next turn to defendant's argument that his appellate counsel did not address the inevitable discovery doctrine that we relied on to reverse the trial court's order suppressing the rifle and machete. In resolving search and seizure issues, we are not bound by the legal theory relied on by a trial court. See, e.g., State v. Esteves, 93 N.J. 498 (1983) (sustaining search based on a theory not relied on at the trial court level where the record contained facts from which the Court could decide the applicability of another warrant exception). See also State v. Guerra, 93 N.J. 146 (1983) (sustaining search even though the telephonic warrant application was defective because the record on appeal contained an objective basis for the Court to conclude that no warrant was required to search the car).

Defendant nonetheless contends that because we addressed the inevitable discovery exception sua sponte, he was deprived of the opportunity to argue against its application. Defendant suffered no prejudice, however, from our resolution of the inevitable discovery issue in the interlocutory appeal. We have carefully reviewed defendant's current arguments and find no basis upon which to reach a different conclusion than the one we previously reached. All of the elements of the inevitable discovery exception were established, clearly and

A-2948-18T2

convincingly, based on the record that was before us when we heard the interlocutory appeal. See State v. Sugar (II), 100 N.J. 214 (1985).[4]

We add that appellate counsel petitioned for certification from our subsequent order dismissing defendant's appeal. That circumstance belies defendant's current contention that his initial appellate counsel failed to pursue the inevitable discovery issue. Defendant has thus failed to establish that the result would probably have been different had his initial appellate counsel argued against invocation of the inevitable discovery exception to the exclusionary rule. Strickland, 466 U.S. at 694.

We next address defendant's contention that his counsel was ineffective for withdrawing a motion to suppress statements defendant gave to police during

---

[4] To invoke the inevitable discovery doctrine, a court must find there is clear and convincing evidence that

> (1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in the discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means.

> Sugar, 100 N.J. at 238.

11

a custodial interrogation. On two occasions during the interrogation, defendant invoked his right to counsel. Each time he did so, the detectives immediately ceased posing questions. After each invocation, defendant on his own initiative informed the detectives that he had changed his mind and wanted to continue the interview.

Trial counsel intended initially to argue that police did not scrupulously honor defendant's invocation of the right to consult with an attorney. Counsel withdrew the motion to suppress defendant's statements, however, when he reviewed the transcript of the interrogation and realized that defendant twice re-initiated the conversation and was provided each time with fresh <u>Miranda</u> warnings.[5] <u>See</u> <u>State v. Mallon</u>, 288 N.J. Super. 139, 147 (App. Div. 1996) ("[I]f a defendant initiates further police conversations after invoking his right to remain silent, the resumption of police questioning will not constitute a failure to scrupulously honor that right."). <u>See also</u> <u>Oregon v. Bradshaw</u>, 462 U.S. 1039, 1044 (1983) (addressing when reinitiation of interrogation by the accused after invoking the right to counsel indicates a waiver of the Fifth Amendment right to have counsel present during the interrogation). Importantly, as we have noted, in both instances, the detectives re-administered <u>Miranda</u> warnings before

---

[5] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

resuming the interrogation, thereby establishing that defendant was knowingly and voluntarily waiving his right to have counsel present notwithstanding his prior invocations of that right.

Counsel explained to the trial court the reason for withdrawing the Miranda suppression motion, acknowledging,

> I can't in good faith claim a Miranda issue at this point in time. I don't have one. I raised it because I felt there might have been an issue depending on what Detective Schutta said, but he has satisfied me, and the transcripts corroborate what he said, that the defendant was Mirandized.

We agree with Judge Picheca that counsel's decision to withdraw the Miranda motion and focus instead on the motion to suppress physical evidence was a reasonable strategy that "falls within the wide range of reasonable professional assistance." Stickland, 466 U.S. at 689. As we have noted, an attorney is not required to pursue a meritless argument. Defendant cannot meet the second prong of the Strickland test, moreover, because any such motion would not have resulted in the suppression of defendant's statements.

We also reject defendant's related contention that counsel rendered ineffective assistance by advising him not to testify to refute Detective Schutta's testimony at the suppression hearing. As Judge Picheca aptly noted in his written opinion:

> [T]here are strategic reasons for a defense attorney to refrain from calling the defendant to testify at the pretrial hearing on a motion to suppress evidence. For instance, providing such testimony may prematurely reveal trial strategy and hinder one's defense, or such testimony may later be used against a defendant if he also chooses to testify at trial. There are likely many other reasons to refrain from calling a defendant at such a hearing.

In State v. Arthur, the Court remarked that, "a defense attorney's decision concerning which witness to call to the stand is 'an art,' and a court's review of such a decision should be 'highly deferential[.]'" 184 N.J. 307, 321 (2005) (quoting Strickland, 466 U.S. at 693). Applying that deferential standard, we conclude counsel's decision to prevent his client from testifying—and being subjected to cross examination—was a sound strategic decision reflecting reasonable professional assistance. We add that defendant has not shown that had he testified the outcome would have been different.

Finally, we consider defendant's contention that his counsel misinformed him regarding the maximum sentence that could be imposed. This contention lacks sufficient merit to warrant all but brief discussion. R. 2:11-3(e)(2). Counsel correctly informed defendant that by virtue of his criminal history, he would be subject to an extended term as a repeat offender if he rejected the plea offer and was convicted at trial. The plea form that defendant initialed explained

14

that by pleading guilty, he could be sentenced to a seven-year prison term with a five-year period of parole ineligibility. In accordance with the plea agreement, the State did not seek an extended term and defendant ultimately received the sentence contemplated in the agreement.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2948-18T2