**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1544-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BRENDON N. MATOS,

     Defendant-Appellant.

_____

Submitted October 24, 2023 – Decided December 15, 2023

Before Judges Natali and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 11-10-1115.

Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the briefs).

Robert J. Carroll, Morris County Prosecutor, attorney for respondent (Tiffany M. Russo, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Brendan N. Matos appeals from the Law Division's June 29, 2020 order denying his post-conviction relief (PCR) petition without an evidentiary hearing. We affirm.

I.

Consistent with the terms of his negotiated plea agreement, defendant pled guilty in 2014 to the first-degree felony murder of his father, along with first-degree robbery and second-degree unlawful possession of a weapon. After merger and consideration of the applicable aggravating and mitigating factors, the court sentenced defendant to a forty-year aggregate custodial term with an eighty-five percent parole ineligibility period subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. Defendant appealed only his sentence and we affirmed. State v. Matos, No. A-1994-14 (App. Div. April 15, 2015).

Following his appeal, defendant filed a timely petition for PCR in which he asserted his plea counsel's representation "during pre-trial . . . and during plea discussions and negotiations" was constitutionally ineffective under the two-part test established in Strickland v. Washington, 466 U.S. 668, 687 (1984).[1]

---

[1] To establish ineffective assistance of counsel, a convicted defendant must satisfy the two-part test enunciated in Strickland, 466 U.S. at 687, by demonstrating that: 1) counsel's performance was deficient, and 2) the deficient performance actually prejudiced the accused's defense. The Strickland test has

Defendant's appointed PCR counsel filed a supplemental petition and brief detailing defendant's claims.[2]

Defendant argued his plea counsel failed to "raise issues which would . . . assist in his defense," such as "fully" pursuing a Miranda[3] hearing to suppress an inculpatory statement elicited during his interrogation. Defendant argued his statement was illegally obtained, and that he did not knowingly, voluntarily or intelligently waive his rights.

Specifically, defendant claimed his statement should have been suppressed based on defendant's "clear[]" invocation of counsel at several points, as well as defendant's diminished mental state during the interrogation. Among other evidence, defendant relied on the report of Dr. Robert Lattimer,

---

been adopted for application under our State constitution. See State v. Fritz, 105 N.J. 42, 58 (1987).

[2] Before us, defendant has not asserted all the arguments he raised before the PCR court. For purposes of conciseness, we address only those arguments which defendant presently appeals to us. As he has failed to reprise the remaining ineffective assistance of counsel claims presented to the PCR court, we accordingly deem those unbriefed arguments waived. See Telebright Corp. v. Dir., N.J. Div. of Taxation, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2023) ("[A]n issue not briefed is deemed waived.").

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

M.D., P.A., one of the experts he retained who opined he was "clearly delusional" during his interrogation based on his incoherent speech and references to his deceased father. On this point, defendant pointed to several instances during his interview as indicative of his confusion and uncertainty, such as when he stated, "So I guess I'm talking now?," repeated references to communicating with his deceased father, as well as his statement to one of the interrogating officers "Why didn't you wait for a lawyer?"

According to defendant, the police ignored his invocation of his right to an attorney in an effort to coerce a confession, as evidenced by the length of his interview, and the officers' refusal to provide him with dry clothing and necessary medical care. Further, he contended the interrogating officers failed to clarify his unambiguous requests for representation. Defendant argued his plea counsel's failure to pursue an application suppressing his statement prejudiced him as it was "essentially the best and only evidence against [defendant]."

As to his representation during the plea negotiations, defendant claimed his counsel was constitutionally deficient by coercing him to plead guilty. Defendant argued he was improperly "led to believe he would lose at trial, would receive a harsher sentence, and had no other recourse but to plead guilty."

4

Further, defendant maintained his plea counsel refused to communicate with him regarding the plea offer, and only informed him of its existence moments before the plea hearing.

Defendant also submitted certifications in support of his petition from both him and his mother. Defendant's certification described that when he was a teenager he "began [to] hear[] voices telling [him] to rob, steal and do drugs." Defendant further stated on the day of the incident he saw "people on the lawn and heard voices" which told him his "father was going to kill [him]," and leading up to the murder he had not slept in eight days.

In discussing the interrogation, defendant stated he "had no idea what was going on and thought [his] father was alive and trying to hire [him] an attorney after [his] multiple requests for an attorney." He further certified he was not given any of his prescription medications while he was incarcerated despite "desperately" requiring them.

Defendant also certified his plea counsel was aware he was not provided his necessary medication and "used this to his advantage to trick [him] into taking a plea of forty . . . years." As related to his plea, defendant maintained plea counsel advised him he "had to accept the plea deal because [he] would be

5

found guilty" at trial, and also stated plea counsel manipulated him to accept the offer by informing him his mother would go bankrupt if they proceeded to trial.

He also stated plea counsel met with him on only two occasions, "for under ten minutes each time" despite requesting more visits. Defendant also certified he was under the impression he was attending a Miranda hearing on the day of his plea proceeding, and because he had not received his medication, he "was very confused and disoriented" when plea counsel "forced [him] to take the . . . deal" minutes before the hearing. Defendant also maintained his plea counsel emailed his mother and instructed her "not to tell [defendant] he was working on a plea deal prior to . . . [the] hearing."

Defendant further detailed he explicitly told plea counsel he was "not willing to plead to any deal that would expose [him] to a sentence greater than twenty . . . years." He reiterated he would not have accepted the plea deal had plea counsel properly advised defendant on the viability of a Miranda motion.

Defendant's mother's certification similarly described that plea counsel visited defendant only twice throughout his representation for approximately ten minutes each visit. She also certified that while imprisoned, defendant failed to receive his necessary medication. His mother attested plea counsel emailed her in October 2013, and stated she "should not tell [defendant] yet that [plea

6

counsel] was attempting to resolve the case by way of a plea deal." In addition, she stated defendant was not informed about his plea deal until five minutes prior to the hearing, but did not specify if she personally witnessed this interaction or if she was informed about it by defendant.

After considering the parties' submissions, record, and oral arguments, Judge Stephen J. Taylor applied the well-recognized standard in Strickland, 466 U.S. at 687, and found defendant failed to establish a prima face claim his plea counsel was ineffective. Accordingly, he denied defendant's petition without an evidentiary hearing and detailed his reasoning in a thoughtful and comprehensive forty-seven-page written opinion.

Judge Taylor determined defendant's claims were not procedurally barred under Rules 3:22-3 and 3:22-4(a), contrary to the State's arguments. He explained defendant's substantive Strickland claims were ripe for review, explaining that although defendant "waived his right to challenge the admissibility of his confession and assert affirmative defenses by virtue of his guilty plea," he was within his right to "argue that counsel's failure to pursue those claims and defenses in the prior proceedings amounted to ineffective assistance of counsel."

A-1544-20

As to the merits, Judge Taylor rejected defendant's argument that plea counsel was ineffective for failing to pursue a Miranda hearing. On this point, the court relied on the fact plea counsel initially filed a motion to suppress defendant's statements. Judge Taylor determined this action was reflective of counsel's knowledge "of the import of the statement as well as the possibility that he might have to litigate the admissibility of the confession." The court also determined plea counsel's choice not to pursue a hearing was sound defense strategy, based on the time limit the State offered for acceptance of its plea offer, and further reasoned if plea counsel chose to litigate the admissibility of defendant's statement and reject the State's offer, he would have been exposed to "a potential life without parole sentence."

The court also concluded counsel's decision did not prejudice defendant, as it rejected defendant's claim that his confession "was the 'only evidence' against him," noting the significant circumstantial and direct evidence which established defendant shot his father and attempted to conceal the murder and robbery. The court noted this evidence included defendant "sending text messages from his father's phone, [and] [his] specific behavior before, during, and after the crime that are indicative of guilt and the appropriate mens rea . . . [as] detail[ed] in the State's expert reports."

8

The court also evaluated the merit of defendant's arguments regarding the admissibility of his confession and rejected defendant's claims that his rights were not honored by investigators, or that he was coerced to confess. Specifically, the court noted that when defendant first invoked his right to an attorney, the interrogating officer ceased the interrogation as required. The court also determined defendant's invocation of his rights did not necessitate his immediate removal from custody, nor did it render his confession inadmissible, as police remained in the process of conducting an active criminal investigation.

Further, Judge Taylor noted defendant was given food, water, and clothing and his questioning only continued after he re-initiated contact with the officers. Overall, the court concluded plea counsel's actions were a "sound trial strategy," and did not prejudice defendant, as counsel negotiated a more favorable plea offer which was less than defendant's exposure to a sentence of life without the possibility of parole.

Finally, the court rejected defendant's arguments regarding the ineffectiveness of his plea counsel in communicating with him based on defendant's plea colloquy. Specifically, the court relied on defendant's sworn testimony at the proceeding, including portions in which defendant described

his satisfaction with counsel, as well as his affirmance he was afforded sufficient time to examine and discuss the offer with plea counsel.

Further, the court noted it was unable to find any evidence in the plea record to support defendant's claims he was confused and disorientated at the proceeding, based on the court's detailed, comprehensive and explicit findings regarding defendant's alertness, responses and overall demeanor when accepting the factual basis for the plea. Although the court acknowledged its requirement to view the facts "in the light most favorable to the defendant," the court concluded it was not compelled "to ignore the record and sworn testimony of defendant."

This appeal followed in which defendant's counsel reprises many of the arguments defendant unsuccessfully raised before the trial court. Defendant specifically asserts:

> POINT ONE
>
> THE PCR COURT IMPROPERLY DENIED DEFENDANT'S CLAIM THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF HIS PLEA COUNSEL WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING
>
> A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS FOR INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENTIARY

HEARINGS AND PETITIONS FOR POST-CONVICTION RELIEF

B.     DEFENDANT RAISED A PRIMA FACIE CLAIM FOR POST-CONVICTION RELIEF BASED ON PLEA COUNSEL'S FAILURE TO LITIGATE THE PREVIOUSLY FILED MIRANDA MOTION

C.     PLEA COUNSEL'S FAILURES TO ADEQUATELY COMMUNICATE WITH DEFENDANT, REVIEW ALL RELEVANT DISCOVERY, AND TO TRANSMIT THE STATE'S PLEA OFFER TO DEFENDANT CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL

II.

Before us, defendant argues his plea counsel was ineffective for failing to litigate a previously filed Miranda motion, as he claims the motion would have been successful, based on the "recorded interrogation of [d]efendant [which] contained abundant material" illustrative that defendant's "confession was not the result of a knowing, intelligent and voluntary waiver." Specifically, defendant relies on his ignored requests for an attorney, the interrogating officer's minimization of the Miranda warnings, law enforcement's withholding of medical treatment, and his "unmistakable signs of delusion" as evidence of his counsel's deficiency in failing to attempt to suppress his statement.

11                                                                      A-1544-20

Defendant also relies on State v. Sims, 250 N.J. 189, 210 (2022), and State v. Diaz, 470 N.J. Super. 495, 522 (App. Div. 2022), and argues because the police refused to inform defendant of his charges, and repeatedly referred to his father's murder in vague terms, he was misled regarding his true status in the investigation.

In addition, defendant argues Judge Taylor erred in denying his petition without an evidentiary hearing as he raised a prima facie claim of ineffective assistance based on prior counsel's inactions during plea negotiations. Specifically, defendant claims his plea counsel failed "to meet adequately with [him] to discuss the case and explain legal issues," or provide and review all relevant discovery materials with defendant, such as his interrogation video.

In addition, defendant contends his plea counsel misrepresented to him plea counsel's intention of litigating a motion to suppress his recorded confession. According to defendant, counsel "hid" the amended plea offer until moments before the hearing. Further, defendant alleges counsel misadvised defendant that if he proceeded to trial he would leave his mother "destitute." Defendant therefore argues the statements asserted in defendant's and his mother's certifications, "raise the question whether the decision to plead guilty was his or his attorney's." He further claims that "[a] proper evaluation of [his]

claim[s] could be accomplished only by having counsel provide testimony at an evidentiary hearing regarding his performance during the plea negotiation."

Having considered these contentions in light of the record and the aforementioned well-established legal principles, we reject all of defendant's arguments and affirm substantially for the reasons detailed in Judge Taylor's written opinion. The judge correctly denied defendant's petition without a hearing after determining he failed to satisfy either the performance or prejudice prong of the Strickland test. That decision is supported by substantial evidence in the record and in accordance with applicable legal principles. We provide the following to amplify our decision.

III.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004). The de novo standard of review also applies to mixed questions of fact and law. Id. at 420. Where, as here, a PCR court fails to conduct an evidentiary hearing, it is within our authority "to conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Id. at 421. A defendant's right to an evidentiary hearing is not automatic, see State v. Preciose, 129 N.J. 451, 462 (1992), but courts should conduct a hearing "to resolve ineffective assistance of counsel claims if a defendant has presented a

prima facie claim in support of post-conviction relief and the facts supporting the claim are outside the trial record." State v. Cummings, 321 N.J. Super. 154, 170 (1999).

When petitioning for PCR, the defendant must establish, by a preponderance of the credible evidence, that he is entitled to the requested relief. State v. Nash, 212 N.J. 518, 541 (2013); Preciose, 129 N.J. at 459. To sustain that burden, the defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

As noted, to establish a prima facie claim of ineffective assistance of counsel, the defendant is obligated to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced his right to a fair trial. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58. Under the first prong of this test, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

Under the second prong, the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is

14

reliable." Ibid. That is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.

Moreover, the acts or omissions of counsel of which a defendant complains must amount to more than mere tactical strategy. Id. at 689. As the Supreme Court observed in Strickland:

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."
>
> [Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).]

When a defendant asserts his attorney was ineffective by failing to file a motion, he must establish that the motion would have been successful. State v.

15

O'Neal, 190 N.J. 601, 619 (2007). "It is not ineffective assistance of counsel for defense counsel not to file a meritless motion." Ibid.

We agree with Judge Taylor and reject defendant's argument his plea counsel was ineffective for failing to litigate a motion to suppress defendant's statement to police as such a motion would have been meritless. See O'Neal, 190 N.J. at 619. As Judge Taylor found, officers did not question defendant after he asserted his right to counsel. Indeed, upon defendant stating, "I mean I need a lawyer," the interrogation immediately ceased. It was only following defendant's re-initiating his conversation with the police and his Mirandizing, did the officers begin interviewing him again while also clarifying potentially ambiguous statements he made. We are satisfied the interrogating officers' consistent clarification and explanations of defendant's Miranda rights both prior to defendant's request for a lawyer and following defendant's re-initiation with the officers does not evidence impermissible interrogation of defendant following an invocation of his right to counsel. See State v. Fuller, 118 N.J. 75, 81-82 (1990); see also State v. Chew, 150 N.J. 30, 65 (1997).

We are also unpersuaded, based on a totality of the circumstances, the interrogating officer impermissibly contradicted defendant's Miranda warnings when he suggested defendant's honesty in the interrogation would benefit him.

16

State v. Puryear, 441 N.J. Super. 280, 297 (App. Div. 2015). We reach this conclusion upon a full review of the record and considering the interrogating officer's language that appealed to defendant's sense of decency, as well as his age and prior experiences with law enforcement. State v. Knight, 183 N.J. 449, 463 (2005).

We also find defendant's reliance on Sims, 250 N.J. at 215, and Diaz, 470 N.J. Super. at 495, misplaced, as both cases are distinguishable from the matter before us. The Court in Sims instructed "[t]he rule announced in A.G.D. is clear and circumscribed. If a complaint-warrant has been filed or an arrest warrant has been issued against a suspect whom law enforcement officers seek to interrogate, the officers must disclose that fact to the interrogee" before beginning their questioning. Id. at 213 (citing State v. A.G.D., 178 N.J. 56, 68-69 (2003)). The court directed "[i]n a case in which there is evidence of such bad-faith conduct on the part of law enforcement officers, the trial court should consider such conduct as part of the totality-of-the-circumstances test." Sims, 250 N.J. at 216.

Applying the Court's ruling in Sims to the record before us, defendant's statement was freely volunteered, and the detectives did not overbear defendant's will in the course of their interrogation. State v. Hreha, 217 N.J.

368, 383 (2014). While the detectives did not advise defendant he was a suspect in the murder of his father, there was no obligation on them to do so as defendant had not been charged with that or any crime related to those events when questioned by the detectives. See Sims, 250 N.J. at 214. Additionally, applying the totality-of-the-circumstances test defendant's waiver was clearly voluntary.

We also note, nothing in the record before us remotely approached the chicanery we condemned in Diaz, 470 N.J. Super. at 495. Indeed, there is no support for the claim the detectives initiated the interrogation to deliberately mislead defendant in "a planned investigative strategy to elicit incriminating statements," id. at 503, as officers did not elicit any information connecting defendant to the murder until after they stated, in response to defendant's re-initiating the conversation and being Mirandized, the charges on the search warrant "stemm[ed] from the incident at your house . . . and what happened with your dad."

As such, defendant failed to establish his plea counsel was ineffective based on his failure to prosecute fully a motion to suppress statements to police because such a motion would have clearly been unsuccessful. Indeed, a review of the record indicates police conducted a lawful interrogation in which defendant voluntarily waived his Miranda rights.

Additionally, defendant failed to illustrate how plea counsel's recommendation to resolve the case by accepting the State's plea offer evidenced actions which "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. Although defendant claims his confession qualified as "the most powerful evidence in the case," as Judge Taylor correctly found, defendant ignores the powerful circumstantial evidence against him. Such evidence included being found in the same area as his father's stolen vehicle, his use of his father's credit cards following his death, and the text messages sent from his father's phone. Affording counsel the requisite "extreme deference," Fritz, 105 N.J. at 52, in his decision to negotiate a plea in an effort to avoid an incredibly harsh sentence, in conjunction with the circumstantial evidence against defendant, plea counsel's failure to litigate the Miranda issue simply cannot be categorized as an error "so serious" to describe counsel as "not functioning as . . . guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687-88.

Even assuming defendant satisfied the performance prong under Strickland, defendant's claim this inaction prejudiced him is simply not supported by the record. See Strickland, 466 U.S. at 687. As Judge Taylor noted, the State's amended plea offer indicated if counsel were to litigate the validity of defendant's Miranda waiver, the State would have withdrawn its plea

offer. In such an event, defendant would be exposed to the possibility of a custodial sentence of life imprisonment without the possibility of parole.[4]

Similarly, we agree with Judge Taylor defendant's claim his plea counsel was ineffective for failing to communicate, review relevant discovery, and properly discuss the plea simply is belied by the record. Indeed, defendant stated at his plea hearing he clearly understood the terms of the plea, and he was in no way coerced to accept it. Further, defendant testified he was provided enough time to review the plea offer and that he was satisfied with his representation. The reliability of these statements is not solely based in the inherent nature that they were entered under oath, but also in the court's explicit findings regarding defendant's overall demeanor during the proceeding. See State v. Simon, 161 N.J. 416, 444 (1999) (stating a defendant's representations during plea hearings carry a presumption of truth).

---

[4] Defendant was originally charged with purposeful murder in violation of N.J.S.A. 2C:11-3a(1), and the grand jury returned an aggravating factor for committing murder while engaged in a robbery. As such, if found guilty, defendant faced life in prison without the possibility of parole. See N.J.S.A. 2C:11-3b(4). The record indicates the State dismissed this charge as part of defendant's guilty plea to felony murder in violation of N.J.S.A. 2C:11-3a(3), which carries a custodial term ranging from thirty years to life. See N.J.S.A. 2C:11-3b(1).

Nor are defendant's mother's certifications persuasive in establishing an issue of material fact warranting an evidentiary hearing, as her statements attest only to the existence of an email from plea counsel which requested she not discuss with defendant the resolution of the case by way of a plea, months before the State's final offer. Further, while she did certify plea counsel failed to inform defendant of the plea until just moments before the hearing, she failed to include if she was present when this occurred, or if this was simply a statement heard secondhand from defendant. In any event, defendant's statements during the sworn plea hearing belie these statements. Again, even if we were to accept defendant's certifications as true, despite their direct contradiction in the record, defendant has failed to illustrate accepting this plea deal prejudiced him. Strickland, 466 U.S. at 687.

In sum, we are satisfied that defendant failed to satisfy either the performance or the prejudice prong of the Strickland test and defendant's arguments to the contrary in his counselled appellate brief are unavailing. To the extent we have not specifically addressed any of defendant's arguments it is because we have concluded they are of insufficient merit to warrant further discussion in a written opinion. See R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1544-20